Robert J. Fuller (#10061)
**FULLER LAW OFFICE, LC**
1090 North 5900 East
Eden, Utah 84310
Telephone (801) 791-7736
rob@fullerattorney.com
*Attorney for Plaintiff Upper Valley Utilities*

## IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF UTAH, CENTRAL DIVISION

| | | |
|---|---|---|
| UPPER VALLEY UTILITIES, LLC, a Utah limited liability company, | ) ) ) ) | **REPLY IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT ON THE ISSUE OF LIABILITY FOR BREACH OF CONTRACT** |
| Plaintiff, | ) ) | **AND** |
| vs. | ) ) ) | **TAKING UNDER 42 U.S.C. §1983** |
| OREM CITY, a municipal corporation, and JOHN DOES I-X, | ) ) ) | (Oral Argument is Requested) |
| Defendants. | ) ) | Civil No.: 2:23-cv-00777-CMR |
| | ) ) | Magistrate Judge Cecilia M. Romero |

Plaintiff UPPER VALLEY UTILITIES, LLC, through counsel, respectfully submits this REPLY IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT ON THE ISSUE OF LIABILITY FOR BREACH OF CONTRACT and TAKING UNDER 42 U.S.C. §1983 against defendant OREM CITY pursuant to DUCivR 7-1, 56-1, and Fed. R. Civ. P. 56.  An oral argument is requested.

## INTRODUCTION AND RELIEF REQUESTED

**A.** **Partial Summary Judgment on the Issue of Liability for Breach of Contract.** The Conduit Agreement restricts *any* sale and *any* use of *any* solely owned conduit runs:

> The City and Upper Valley agree that **neither party shall sell**, **lease** or otherwise **transfer the right to use <u>any</u>** of their solely-owned conduits (conduits owned individually, not jointly, by the parties) until at least two of the **jointly-owned** 1 1/4" conduits have been sold or leased.

Conduit Agreement, 4.4. Restrictions on Transfer of Conduit, Exhibit 1 (emphases added).

Orem City declares under oath an "absolute" that none of the jointly owned conduits have ever been sold, leased, or used:

> Orem City has **never** sold, leased, transferred, taken, or otherwise used any of the conduits within the UVU Conduit System. *Id.* ¶ 16.

Orem City Opp. Mot. Summ. J., Doc. 26, Fact 13, p.7, April 29, 2024 (emphasis added).

Orem City admits that it has sold and leased parts of its solely owned conduits:

> Each of the conduits involved in Brooks Fiber sale, the TCG Utah sale, the CenturyLink sale, the First Digital lease, and the UTOPIA lease **are located within the top two quadlocks in Trench #3** that were pulled as part of the Center Street Project, **or other conduits** that are or were **owned solely by the City**. *Id.* ¶ 14.

Orem City Fact 12, p.6 (emphasis added). Summary judgment on the issue of liability based on Orem City's breach of paragraph 4.4 of the Conduit Agreement should therefore be entered in favor of Upper Valley Utilities, LLC ("UVU").

**B.     Taking Under 42 U.S.C. §1983.**   Orem City's opposition to the taking claim is based, in part, on the following:

> Again, however, Orem has sworn testimony that it has not sold, leased, taken, or otherwise used any of the conduits within the UVU Conduit System, including the 2-inch conduits that Plaintiff owns during the 99-year period. *See* Tschirki Decl., Ex. 1, ¶ 14–16.

Orem City Opp., p.9. Based upon Orem City's sworn testimony, including Fact 13, a question of fact has been raised regarding the taking issue.   A ruling on the Taking Clause cause of action should therefore be deferred pending discovery.

## RESPONSE TO OREM CITY'S ADDITIONAL FACTS

1.     Orem City entered into the Conduit Agreement with Plaintiff on December 11, 1996. *See generally* Conduit Agreement [Dkt. No. 7-1].

**UVU Response:** Agreed.

2.     Through the Conduit Agreement, the City contracted with Plaintiff to install a conduit system consisting of four separate trenches (the "Greater Conduit System"). *Id.* ¶ 3.2.

**UVU Response:** Agreed, and the UVU side also installed additional conduit runs in addition to the four trenches at the direction of Jim Reams, Orem City Manager.[1]

3.     Each of the trenches contain multiple conduits, and the Conduit Agreement divided ownership of those conduits among several entities. *Id.* ¶¶ 4.1–4.1.6.

**UVU Response:** Agreed.   UVU adds that some runs were directionally drilled as opposed to trenched.

---

[1] "City might desire to install additional conduits installed during the term of this Agreement.   The parties agree to negotiate . . . (beyond the scope of the Project) in good faith." Contract Agreement, ¶2.3. Additional Construction, Exhibit 1.

4.      The Conduit Agreement provided Orem solely owned certain 1.25-inch conduits and 2-inch conduits. *Id.* ¶ 4.1.4.

**UVU Response:** Agreed, and the Conduit Agreement exhibits specify which conduits are solely owned by Orem City.

5.      The Conduit Agreement provided that UVU solely owns certain 2-inch conduits for 99 years, after which ownership will transfer to the City. *Id.* ¶¶ 4.1.5, 4.2.

**UVU Response:** Agreed.

6.      The Conduit Agreement provided that Orem and UVU jointly own certain 1.25- inch conduits for 99 years, after which Orem will assume sole ownership. *Id.* ¶¶ 4.1.6, 4.2.

**UVU Response:** Agreed.

7.      The UVU Conduit System is a subpart of the Greater Conduit System, consisting of all the conduits within the Greater Conduit System in which Plaintiff has a sole or joint 99-year ownership interest. *See* Tschirki Decl., Ex. 1, ¶ 9.

**UVU Response:** Agreed, with a clarification that the "Greater Conduit System" is referred to as the "Project" in the Conduit Agreement with exhibits (as opposed to a separate conduit system). Conduit Agreement, ¶2.2. Project.

8.      Each of the trenches in the Greater Conduit System contain groupings of four 1.25-inch conduits called "quadlocks." *See* Conduit Agreement [Dkt. No. 7-1] ¶ 4.1.

**UVU Response:** Agreed.

9.      Trench #3 in the Greater Conduit System contains four quadlocks. The upper two quadlocks contain conduit numbers eleven through eighteen, all of which are or were owned solely by Orem City. *Id.* at UVU P. 0023.

**UVU Response:** Agreed. UVU adds that conduits numbered 8-10 are the jointly owned "City of Orem/Upper Valley" conduits in Trench #3.

10. In or about May 2000, Orem City undertook the "Center Street Fiber Optic Conduit Pullbox Project" ("Center Street Project"). *See* Tschirki Decl., Ex. 1, ¶ 12.

**UVU Response:** Unknown, disputed based on a lack of knowledge because the project had never been disclosed by Orem City to the UVU side prior to Orem City's response to this motion for summary judgment, with no prior notice that Trench #3 has been modified.

11. The Center Street Project involved completing "pullouts" of the top two quadlocks contained in Trench #3. *Id.* ¶ 13.

**UVU Response:** Unknown and disputed based on a lack of knowledge because the project had never been disclosed by Orem City to the UVU side prior to Orem City's response to this motion for summary judgment and because as-built drawings have yet to be disclosed to the UVU side to verify which conduits were modified or used in Trench #3.

12. Each of the conduits involved in Brooks Fiber sale, the TCG Utah sale, the CenturyLink sale, the First Digital lease, and the UTOPIA lease are located within the top two quadlocks in Trench #3 that were pulled as part of the Center Street Project, or other conduits that are or were owned solely by the City. *Id.* ¶ 14.

**UVU Response:** Unknown and disputed based on a lack of knowledge because the project had never been disclosed by Orem City to the UVU side prior to Orem City's response to this motion for summary judgment, and because as-built drawing(s) have

yet to be disclosed to the UVU side, and because Orem City does not disclose or specify which "other conduits" Orem City is referring to; undisputed that Orem City has apparently sold and leased various conduits.

        13.    Orem City has never sold, leased, transferred, taken, or otherwise used any of the conduits within the UVU Conduit System. *Id.* ¶ 16.

        **UVU Response:** Unknown and disputed based on a lack of knowledge and because Orem City has yet to disclose which conduit runs within the UVU Conduit System are currently occupied or unavailable as opposed to available for use; Orem City also has yet to specify which specific conduit runs that are or were solely owned by Orem City have been used or sold to date in each trench.

**REPLY ARGUMENT**

**POINT I.   BREACH OF CONDUIT AGREEMENT**

**OREM CITY'S ADMITTED SALES AND LEASES OF SOLELY OWNED CONDUIT RUNS, MADE BEFORE FIRST SELLING OR LEASING "AT LEAST TWO OF THE JOINTLY-OWNED 1 1/4" CONDUITS HAVE BEEN SOLD OR LEASED," VIOLATES PARAGRAPH 4.4 OF THE CONDUIT AGREEMENT AS A MATTER OF LAW.**

  **A. Orem City admits that the first two of four breach of contract elements are satisfied.** [2]  "Orem does not dispute that the Conduit Agreement is enforceable or that UVU performed its obligations thereunder." Orem City Opp., p.8, Doc. 26, April 29, 2024.

  **B. Orem City breached the Conduit Agreement paragraph 4.4.** Orem City argues that UVU's "contract claim fails because Orem never sold or leased any conduits in the UVU conduit system." Orem City Opp., p.7. But Orem City ignores and does not even mention nor address the following key restrictive provision within the Conduit Agreement:

> The City and Upper Valley agree that **neither party shall sell**, **lease** or otherwise **transfer the right to use <u>any</u>** of their **solely-owned** conduits (conduits owned individually, not jointly, by the parties) until at least two of the **jointly-owned** 1 1/4" conduits have been sold or leased.

---

[2]  *See* contract claim elements in UVU's opening brief, citing *Johnson v. USANA Health Scis., Inc.*, 632 F. Supp. 3d 1245, 1256–57 (D. Utah 2022), *appeal dismissed,* No. 22-4104, 2023 WL 3163251 (10th Cir. Apr. 11, 2023).

*See* Conduit Agreement, 4.4. Restrictions on Transfer of Conduit, Exhibit 1 (emphases added). In applying this paragraph 4.4 restriction on transfers, Orem City breached the Contract Agreement if (1) Orem City sold or leased "***any*** of their solely-owned conduits" (2) prior to or "until at least two of the jointly-owned 1 ¼" conduits have been sold or leased."

       **1.**      **Orem City admits it has sold and leased parts "of their solely-owned conduits":** Orem City makes reference to specific conduits within a trench that is part of the Project described in the Conduit Agreement, namely Trench #3:

> The Center Street Project involved completing "pullouts" of the top two quadlocks contained in ***Trench #3***. *Id.* ¶ 13.

Orem City Fact 11, p.6 (emphasis added). The Conduit Agreement Trench #3 configuration shows four quadlocks (16 individual 1-1/4" conduits) along with two additional 2" conduits in the bottom of the trench as follows:

EXHIBIT "B"  Page 3 of 4

## Trench #3



*See* Conduit Agreement, Doc. 7-1, p.23, Exhibit 1. Orem City then admits to the following

**three sales** and **two leases** of Orem City's solely owned conduits within the Conduit

Agreement Trench #3 "or other conduits:"

> Each of the conduits involved in Brooks Fiber sale, the TCG Utah sale, the
> CenturyLink sale, the First Digital lease, and the UTOPIA lease **are located
> within the top two quadlocks in Trench #3** that were pulled as part of the
> Center Street Project, **or other conduits** that are or were **owned solely by the
> City**. *Id.* ¶ 14.

Orem City Fact 12, p.6 (emphasis added). All of these admitted sales and leases of conduit "owned solely by the City" were prohibited under the terms of the Conduit Agreement paragraph 4.4 "until at least two of the jointly-owned 1 ¼" conduits [had] been sold or leased."

> **2.     Orem City also admits that none of the jointly owned conduits were sold, leased, or used.**

> Orem City has never sold, leased, transferred, taken, or otherwise used any of the conduits within the UVU Conduit System. *Id.* ¶ 16.

Orem City Fact 13, p.7. The UVU Conduit System, defined substantially the same by both parties, consists of the following under Orem City's definition:

> Orem City contracted with Utah Valley Utilities ("UVU" or "Plaintiff") to install a conduit system (the "Conduit Agreement"). As relevant here, the Conduit Agreement outlined three categories of conduits: (1) conduits Orem owned outright*; (2) conduits Orem jointly owns with UVU for 99 years*, after which Orem will assume full ownership; *and (3) conduits UVU solely owns for 99 years*, after which ownership will pass to Orem. The *latter two categories of conduits in which UVU has an interest constitute the "UVU Conduit System*."

Orem City Opp., p.1 (emphasis added).   Orem City's declaration, that none of the "conduits Orem jointly owns with UVU" were sold prior to Orem City's sale of conduits "located within the top two quadlocks in Trench #3," proves that the five sales and leases all breached the Conduit Agreement paragraph 4.4. Similarly, Orem City's admitted sales and leasing of "*other conduits* that are or were *owned solely by the City*" (Orem City Fact 12, p.6, emphasis added), constitute additional breaches of the Conduit Agreement

paragraph 4.4. Each and all of the five specific breaches of the Conduit Agreement satisfy the third element of UVU's breach of the express terms of the Conduit Agreement cause of action.

        **C.**      **Orem City's breach of the Conduit Agreement paragraph 4.4 has damaged UVU.**  UVU has been damaged because it has not received its share of 1-1/4" conduit sales and lease proceeds from Orem City. Orem City ignored the Conduit Agreement promises by selling its solely owned conduits before first selling at least two of the jointly owned conduits.   UVU is entitled to 50% of the fair market value of any sale and lease of "at least two of the *jointly-owned* 1 1/4" conduits" in each run. This percentage is based upon the Contract Agreement that specifies the exact ownership percentage between UVU and Orem City as to the 1-1/4" conduits, meaning 50/50:

> **4.1.6. City of Orem & Upper Valley.** The 1 1/4" conduits (and in some cases, entire quadlocks) designated as "City of Orem & Upper Valley" on Exhibit "B" shall be ***owned*** and ***maintained*** jointly by the City and Upper Valley on a ***50/50 basis***.

Conduit Agreement, 4.1.6, Exhibit 1 (emphasis added). The *exact* dollar amount of damages (including the actual value calculations, time value of money factors, fees, and consequential damages) are beyond the scope of this motion for partial summary judgment. Orem City argues as follows regarding the damage element:

> At the very least, there are genuine disputes of material fact on whether Orem breached the Conduit Agreement in the manner alleged and whether that breach damaged Plaintiff. *See* Tschirki Decl., Ex. 1, ¶ 14–16.

Orem City Opp., p.1.   UVU is damaged as a matter of law because Orem City refuses to pay 50% of the proceeds from the specified sales and leasing of the Trench #3 conduits as well as the use of unidentified "***other conduits*** that are or were ***owned solely by the City***." Orem City Fact 12, p.6 (emphasis added). As noted in UVU's opening brief, Orem City lists specific dollar amounts related to various sales and leases in the Orem City 2023 PowerPoint, Exhibit 2. *See* Damages section of UVU's opening brief, starting on p.33 of Doc. 22.   Based upon Orem City's violation of paragraph 4.4, the defendant is also liable for UVU's accumulating legal fees per paragraph 7.4., which also constitutes a separate element of damages. *See* Conduit Agreement, ¶7.4. Attorney's Fees, Exhibit 1 ("whether or not the matter is actually litigated").

Partial summary judgment on the issue of liability alone should be issued in favor of UVU. Orem City is liable as a matter of law for breaching the Conduit Agreement, paragraph 4.4, as to the 1-1/4" conduits.

**D.     Orem City should be ordered to disclose precisely which runs are occupied.**   Based upon Orem City's admitted use of Trench #3 and "other conduits" (Orem City Fact 12) the Defendant should now be ordered to disclose precisely, by trench and conduit number, which 1-1/4" conduit runs in the Project are now occupied or sold and which runs remain open and available. *See* UVU Mot. Summ. J, pp.5, 38, requesting additional relief.

**POINT II.    FIFTH AMENDMENT TAKING UNDER 42 U.S.C. §1983**

**OREM CITY PRESENTS A SWORN STATEMENT OF FACT THAT NOW REQUIRES DISCOVERY AND AN INSPECTION OF THE UVU CONDUIT SYSTEM TO RESOLVE UVU'S CAUSE OF ACTION BASED ON THE TAKING CLAUSE.**

**A.    A taking occurred if Orem City occupied UVU's property.**

The government "takes" property when it physically invades or occupies private property or when it gives other individuals a permanent and continuous right to enter the property. *Nollan v. Cal. Coastal Comm'n*, 483 U.S. 825, 831–32 (1987).

Orem City Opp., pp.8-9.

**1.    UVU's private property consists of multiple 2" conduit runs.**

Orem City admits that UVU has exclusive ownership over the UVU 2" conduits:

> Plaintiff has exclusive ownership over the 2-inch conduits in the UVU Conduit System for 99 years. *See* Conduit Agreement [Dkt. No. 7-1] ¶¶ 4.2, 4.2.

Orem City Opp., p.9.

**2.    Taking of multiple 2" conduit runs for a public purpose is now disputed.**    Orem City's opposition to UVU's taking claim is based, in part, on the following:

> Plaintiff alleges that Orem City "took" those conduits by selling or leasing them to third parties. *See* Amend. Compl. [Dkt. No. 7] ¶¶ 146–73; MPSJ [Dkt. No. 22] at 40–49. Again, however, Orem has sworn testimony that it has not sold, leased, taken, or otherwise used any of the conduits within the UVU Conduit System, including the 2-inch conduits that Plaintiff owns during the 99-year period. *See* Tschirki Decl., Ex. 1, ¶ 14–16.

Orem City Opp., p.9.   This sworn testimony has now created a question of fact regarding the alleged occupation of UVU's property and requires discovery. [3]

### 3.   Orem City's sworn testimony conflicts with prior impressions.

This litigation was commenced after Orem City left the impression with the UVU side that certain conduit runs owned by UVU are now occupied:

> In an effort to start marketing their conduit rights to a variety of fiber optic service providers (such as Google, AT&T, CenturyLink, Brooks Fiber, and others), Chuck and Casey were preparing to inspect and "proof test" their conduit runs in 2023. . . . Upon contacting Orem City to coordinate the testing plans and prepare to jointly market parts of the system, the UVU side made an alarming discovery: certain 2" conduit runs within the UVU Conduit System are already occupied with a fiber communication cable.

UVU Mot. Summ. J. Opening Brief, pp.9-10. Consistent with the discussions regarding the possible unauthorized usage of UVU's 2" conduit runs, Orem City provided copies of various conduit use contracts, including those in Orem City's Opposition Exhibits B-F.

---

[3]  UVU's opening brief includes Fact 16, referring to a check for $7,329.76 that Orem City sent to the UVU side in 2007:

"The "Found Payments" section of the Orem City 2023 PowerPoint notes that a payment was made in 2007, in the amount of $7,329.76 (listing Charles Schvaneveldt, at the Stake Center Locating, Inc./Upper Valley Utilities Corp. address at the time) with the following Description: *"City's 2007 obligation to Upper Valley pursuant to the 12/11/1996 agreement between the City and Upper Valley"* and no mention is made of any 2" conduit run(s). Orem City 2023 PowerPoint, p. 31, Exhibit 2 (emphasis added)."     See UVU Mot. Summ. J., Fact 16.   Orem City does not dispute nor even address this Fact 16. It remains a mystery why Orem City would send a check in 2007 in light of Orem City's new Fact 13 that swears Orem City has "never sold, leased, . . . used" any of the UVU Conduit System.

Orem City also provided the *Orem City Spreadsheet of Contracts and Conduit Usage*, p.24, Doc. 22-4, Exhibit 5 ("Orem City Spreadsheet of Conduit Usage"). The Orem City Spreadsheet of Conduit Usage also indicates that 2" conduit *is* being used under the UTOPIA lease:

| | |
|---|---|
| Lease for 2,567 feet of (1) 1 1/4" conduit from 800 West to 1200 West in Center Street. Lease for 7,197 feet of (1) 1 1/4 " conduit from 800 West to 300 East in Center Street. Lease for 2,064 feet of (1) 2" conduit crossing I-15 along 1200 South. | Includes conduit in other streets too. |

Id., p.24, Doc. 22-4, Exhibit 5. The Orem City UTOPIA Agreement confirms the same 2,064 feet of 2" conduit usage in Segment G:



# City of Orem

| Segment | Feet | Conduit Type | Date Used | Location |
|---|---|---|---|---|
| F | 84 | One 2" conduit | Sep-04 | Crossing 400 S along 800 W |
| G | 2064 | One 2" conduit | Jan-06 | Crossing I-15 along 1200 S |
| H | 8153 | One 1" conduit | Sep-05 | Center to 1000 S along State |
| I | 264 | One 1 1/4" conduit | Sep-05 | Crossing State along 800S |
| | 10,565 | *Total Feet* | | |

*See* UTOPIA Agreement, Doc. 22-3. p.16, Exhibit 4. The map of "Segment G" also indicates the following conduit path:



*See* Doc. 22-3, p.16, Exhibit 4.   The 2" conduit under I-15 was "provided and installed" by UVU as noted in UVU's Fact 13, which is not disputed by Orem City.   Exhibit 1 of the Conduit Agreement also identifies this same conduit run:



*See* Conduit Agreement Map, Ex. A of Doc. 7-1, p.20, Exhibit 1. Orem City does not disclose nor specify which 2" conduit runs are being used by UTOPIA or specify what is

meant by the Orem City Spreadsheet note that indicates the UTOPIA usage "*[i]ncludes conduit in other streets too.*" *See* Orem City Spreadsheet of Conduit Usage, Doc. 22-4, p. 24, Exhibit 5 (emphasis added).

Notwithstanding the facts and exhibits that appear to indicate that parts of UVU's 2" conduit system is being used, Orem City has provided "sworn testimony that it has not sold, leased, taken, or otherwise used any of the conduits within the UVU Conduit System, including the 2-inch conduits that Plaintiff owns during the 99-year period." Orem City Opp., p.9.   UVU should be granted leave to renew this motion as to the taking claims following discovery.

**B.     Relief under the Taking Clause is appropriate for UVU's 2" conduit claims.**   Orem City argues that "Plaintiff's federal takings claim also fails as a matter of law because his claim, if any, sounds in contract." Orem City Opp., p.9.

**1.     This Strategic Partnership is not a landlord-tenant relationship.**
Orem City suggests that taking possession of UVU's 2" conduit network and easement would be just as simple as terminating some lease:

> For example, *if Orem took possession* of the 2-inch conduits after 30 years, then Plaintiff could initiate a breach of contract action and recover the value of a 69-year interest in the conduits—*no different than if a lessor committed breach by <u>terminating a lease</u>* early.

Orem City Opp., p.11 (emphases added). This is an oversimplified false assertion. The only power Orem City has to take possession of UVU's 2" conduit system is by exercising its rights as a Sovereign.

First, there is no such thing as Orem City "terminating" UVU's 99-year ownership rights even if Orem City was able to terminate the Conduit Agreement. Based on the unique survival language of the Conduit Agreement, UVU's granted right of present possession of the 2" conduit runs and system cannot be involuntarily terminated under the terms of the Conduit Agreement:

> The joint ownership of the conduit owned by the City and Upper Valley, and the ownership of the **conduit owned individually by Upper Valley**, **shall survive** for a period of ninety-nine (99) years from the date hereof, **_regardless of any other termination of this Agreement_**, . . . "

Conduit Agreement, 4.2. Survival of Ownership of Conduit, Exhibit 1 (emphases added). Orem City makes it sound simple to take possession of UVU's property because there is a contract: "For example, if Orem took possession of the 2-inch conduits after 30 years, then Plaintiff could initiate a breach of contract action . . ." Orem City Opp., p.11. This hypothetical payment formula is not in the Conduit Agreement. The Conduit Agreement does not give Orem City *any* power to take possession of *any* of UVU's property. Orem City's example makes it sound as if a servient estate owner can suddenly decide to take the

rights of the dominant estate by paying money.[4]  However, the servient Defendant in this

case does wield one special power to acquire or to take UVU's dominant estate in the 2"

conduit runs. UVU's 2" conduit ownership rights "shall survive" short of a taking by the

Sovereign, which requires just compensation:

> "The Fifth Amendment does not prohibit the government from taking its
> citizens' property; it merely prohibits the government from taking property
> without paying just compensation. U.S. Const. amend. V."

*Miller v. Campbell Cnty.*, 945 F.2d 348, 352 (10th Cir. 1991).

Orem City may be underestimating the unique power UVU was granted by

prior administrations.   Orem City negotiated to acquire a 50% interest in miles of installed

1-1/4" conduit without paying for the labor nor materials.   The benefit came with duties

and express restrictions, including UVU's substantial long-term rights to the UVU 2"

conduit network. Orem City cites no cases that address this unique conduit ownership

survival clause, paragraph 4.2, cited above.[5]

---

[4]  "Their right to have the water flow in their canal is as sacred as a freeholder's right against
intrusion by trespassers. In this respect, any attempt by County officials to invade or
interfere with plaintiffs' right in the easement, irrespective of the question of sovereign
immunity, is subject to the injunctive process directed against those officials." *Big
Cottonwood Tanner Ditch Co. v. Hyland Realty, Inc.*, 8 Utah 2d 341, 344, 334 P.2d 755,
757 (1959)(f.n. omitted).

[5]  The Conduit Agreement is also different from other agreements Orem City entered into
with conduit users. In the First Digital agreement (Doc. 26-1, p. 37) Orem City Exhibit E,
the conduits remain the property of Orem City: "The Conduit System, including the leased
Conduits and Ducts, shall at all times be and ***remain the property of Licensor***."   Emphasis
added.

Second, Orem City and UVU are bound to one another in this unique public-private Strategic Partnership arrangement:

> WHEREAS, the City finds that the ***strategic partner relationship*** outlined in this Agreement is the ***most economically viable method*** of protecting the City's rights-of-way from repeated trenching and reserving sufficient conduit space for future City needs . . .

Conduit Agreement, p.3, Doc. 7-1, Exhibit 1 (emphasis added). Orem City apparently found that having UVU supply and install miles of jointly owned 1-1/4" conduit at the sole expense of UVU was "the most economically viable method" of acquiring future conduit capacity. This partnership relationship also came at a price to Orem City, meaning the ownership rights UVU has acquired for the 99-year period. A typical landlord-tenant agreement does not involve the unlimited construction risk that UVU assumed while building the Project nor the unlimited maintenance risks. Conduit Agreement, ¶4.1.6 ("maintained jointly").

**2.      The Conduit Agreement does not have a contract remedy as to the taking of 2" conduit.**

> Even assuming *arguendo* that Orem had sold or leased some of the 2-inch conduits at issue, ***contractual remedies*** would be sufficient to make Plaintiff whole.

Orem City Opp., p.11 (emphasis added). There are no "contractual remedies" in the Conduit Agreement that specifically provides relief in the event Orem City takes or

occupies UVU's 2" conduit runs. Consideration of Orem City's contractual remedy

defense starts with the United States Supreme Court's recent *Knick* opinion from 2019:

> [T]he property owner has suffered a violation of his Fifth Amendment rights
> when the government takes his property without just compensation, and
> therefore may bring his claim in federal court under § 1983 at that time.

*Knick v. Twp. of Scott, Pennsylvania*, 139 S. Ct. 2162, 2168, 204 L. Ed. 2d 558 (2019).

*Knick* does not foreclose a possible taking claim just because the real property rights

happen to be granted within a contract.

          **a.**    ***Wheelwright and Hughes.***    Orem City cites the unpublished

*Wheelwright v. Ogden City Airport* case that mentions "taking claims rarely arise under

government contracts because the Government acts in its commercial or proprietary

capacity in entering contracts, rather than in its sovereign capacity." Orem City Opp., p.

10. *Wheelwright* also states that "[a]lthough the property interest at the core of physical

takings claims is typically real or personal property, the Fifth Amendment also extends to

intangible rights, such as leaseholds and contracts." *Wheelwright v. Ogden City Airport*,

No. 22-4083, 2024 WL 256992, at *3 (10th Cir. Jan. 24, 2024)(unpublished decision).

*Wheelwright* never reached the takings claims: "Assuming, without deciding, that the City

acted as "sovereign," the problem for plaintiffs is that they have failed to provide any

authority that the "first right of refusal," fee-simple assessments, or terms of their estate-

planning documents made them the **rightful owners of the Airport property**. As such, we

decline to consider these arguments. . . ." Id., at 4 (unpublished, internal citations and

footnotes omitted, emphasis added).   The quote cited by Orem City from *Wheelwright*

appears to come from the *Hughes* case, addressing a service contract dispute as opposed to

a real property issue:

> In December 1985, NASA and Hughes entered into a **Launch Services Agreement** (LSA), which required NASA to use its "best efforts" to launch ten of Hughes' HS–393 satellites on space shuttles.

*Hughes Commc'ns Galaxy, Inc. v. United States*, 271 F.3d 1060, 1064 (Fed. Cir. 2001)(emphasis added). "At trial, Hughes did not submit specific evidence of a taking, but

argued in its post-trial brief that it was entitled to interest on its damages under the Fifth

Amendment." Id., at 1070. "Moreover, the evidence did not establish, as Hughes asserts,

that the nature of the Government's action was akin to a **physical invasion** of Hughes' right

to shuttle space." Id., (emphasis added). In contrast to *Hughes*, UVU is alleging a physical

invasion of its property. The same Federal Circuit also mentioned *Hughes* in 2009:

> It is true that there is language in earlier cases from this court to the effect that **"[i]n general, takings claims do not arise under a government contract** because ... the government is acting in its proprietary rather than its sovereign capacity, and because remedies are provided by the contract." *See St. Christopher Assocs., L.P. v. United States,* 511 F.3d 1376, 1385 (2008) (citing *Hughes,* 271 F.3d at 1070). **But that language is nothing more than a passing comment** about government contract law, and has to be understood in that context.

*Stockton E. Water Dist. v. United States*, 583 F.3d 1344, 1368 (Fed. Cir. 2009), *on reh'g*

*in part,* 638 F.3d 781 (Fed. Cir. 2011)(emphasis added).

      **b. *Ogden Regional Airport*.**   Orem City cites the *Ogden Regional Airport* case:

> "Indeed, it is well established that a plaintiff who is suing in connection with a government contract 'is entitled to a takings remedy only if it is foreclosed from bringing a breach of contract action, *i.e.*, if its **contract rights have been 'taken**.'" *Ogden Reg'l Airport Ass'n, Inc. v. Ogden City Airport*, 614 F. Supp. 3d 1005, 1015 (D. Utah 2022), *aff'd sub nom. Wheelwright*, 2024 WL 256992.

Orem City Opp., p.10 (emphasis added).   This quote from the *Ogden Regional Airport* case also included footnote number 66, which cites *Cross Continent Dev., LLC v. Town of Akron* to explain the context of where the quote came from.   Turning to *Cross Continent*, we find the cited quote under the heading "Unlawful Taking Claim":

> Turning to my analysis, it is well established that a plaintiff who is suing in connection with a government contract "is entitled to a takings remedy only if it is foreclosed from bringing a breach of contract action, *i.e.,* if its contract rights have been 'taken'." . . . In other words, "[a] takings claim has limited applicability when a claimant has a **viable breach remedy**." *Pi Electronics,* 55 Fed.Cl. at 285. "This is so because '[v]irtually every contract operates, not as a guarantee of particular future conduct, but as an **assumption of liability in the event of non-performance**.' " *Id.*

*Cross Continent Dev., LLC v. Town of Akron, Colo.*, 742 F. Supp. 2d 1179, 1184 (D. Colo. 2010)(emphasis added).   The Conduit Agreement between UVU and Orem City does not have a "viable breach remedy" in the event Orem City decides to simply take UVU's property. Orem City's alleged liability is not the result of "non-performance" under the Conduit Agreement. Instead, it is the alleged taking of property by the sovereign Orem City.

UVU and Orem City never contemplated the rights of the parties upon early termination and never provided a method to resolve damages as to UVU's 2" conduit ownership under the Conduit Agreement:

> I find the *Zoeller* opinion instructive on that issue. There, as here, a lessee of government land brought suit against the government alleging that its termination of a lease effected a taking. *Zoeller,* 65 Fed.Cl. at 452. The court noted that plaintiff's claims arose out of the termination of the lease, and held that the ***lease between the plaintiff and the government "prescribed the contract rights of the parties upon termination***." Id. at 462. The lease ***"contemplated and provided a method of resolving damages upon [its] termination***", and "[b]y entering into the Lease, "[b]y entering into the Lease, ***the plaintiff agreed to be compensated under the terms of the Lease."****Id.*

*Cross Continent Dev., LLC v. Town of Akron, Colo.*, 742 F. Supp. 2d 1179, 1185 (D. Colo. 2010)(emphasis added).   There is no Conduit Agreement provision that "prescribed the contract rights of the parties upon termination." The Conduit Agreement has not "contemplated and provided a method of resolving damages upon [its] termination." Viable breach remedies are simply missing as to UVU's 2" conduit property.   Further, as detailed above, UVU's 99-year conduit ownership "survives" any termination of the Conduit Agreement.

The *Cross Continent* case also sheds light on the other cases cited by Orem City.   After discussing *Pi Electronics, Hughes Communications, and Castle*, the court makes the following point: "None of the above cases, however, dealt with leases involving

real property." *Cross Continent Dev., LLC v. Town of Akron, Colo.*, 742 F. Supp. 2d 1179, 1184 (D. Colo. 2010).

   **c.**  ***Masso-Torrellas***.  Orem City also cites the *Masso-Torrellas* case, a dispute relating to "contracts for the construction of a municipal transportation terminal." *Masso-Torrellas v. Municipality of Toa Alta*, 845 F.3d 461, 464 (1st Cir. 2017). One passage cited by Orem City appears to come from the *Redondo–Borges* case, in which the court was "unable to find any clear statement of the precise property interest that the plaintiffs contend is at stake." *Redondo-Borges v. U.S. Dep't of Hous. & Urb. Dev.*, 421 F.3d 1, 8 (1st Cir. 2005). None of these cases support the dismissal of UVU's taking claims.

   **3.**  **UVU owned property used in the strategic partnership venture**. UVU owned the UVU 2" conduits before and after the UVU 2" conduits were installed into the strategic partnership trenches. *See* UVU undisputed Facts 4 and 13. Orem City has never owned the UVU 2" conduit. Conduit Agreement 2.2.2.2, Exhibit 1 ("the 2" conduit that is not part of the ITS project and not owned by the City [ ]. Upper Valley may also keep the 2" conduit itself").   Orem City never paid for any material costs nor the labor costs of installing UVU's 2" conduit runs.   UVU had property rights as to UVU's 2" conduits before it entered into the Conduit Agreement. The Conduit Agreement recognizes that "Upper Valley began construction on the Project before this Agreement was executed." Id., p.3. Prior to the signing of the Conduit Agreement, UVU had a protectable property right in the UVU 2" conduits that it provided and installed.

However, resort to the takings clause "was warranted by the fact that the landowner had **rights in the property separate and distinct from any rights conferred by contract**." *Castle v. United States,* 48 Fed.Cl. 187, 218–19 (2000), *aff'd in part, rev'd in part, and vacated and remanded in part,* 301 F.3d at 1343. The Court of Federal Claims has recognized that vindication of **rights existing independently of the contract at issue cannot be restricted to contractual remedies**. *See Scan–Tech Sec., L.P. v. United States,* 46 Fed.Cl. 326, 342 (2000) (refusing to preclude takings remedy because court could not discern what rights contract created); *Integrated Logistics Support Sys. Int'l, Inc. v. United States,* 42 Fed.Cl. 30, 34–35 (1998) (refusing to dismiss takings claim when court could not conclude whether contract conferred rights at issue).

*Pi Elecs. Corp. v. United States*, 55 Fed. Cl. 279, 286 (2003)(emphasis added).

### 4.   Taking claims remain against John Doe government entities.

UVU has named several John Doe defendants. Complaint, ¶¶ 24-25, p.6, Doc. 7. UTOPIA is believed to be a government entity. Complaint, ¶62.   See Utah Governmental Immunity Act Database.[6]   UTOPIA is also believed to be operated by possibly 20 municipalities in Utah, meaning possible John Doe government entities who could be named as additional defendants as discovery progresses.[7]   UVU has no contractual relationship to the possible John Doe government entities. UVU's taking cause of action should not be dismissed at this early stage.

---

6   https://db.corporations.utah.gov/gia/.

7   https://www.utopiafiber.com/cities/ ("Brigham City, . . . ")

## CONCLUSION

Orem City is liable based upon multiple express breaches of the Conduit Agreement, including paragraph 4.4. Restrictions on Transfer of Conduit.

Based upon Orem City's Fact 13, swearing that Orem City has never sold, leased, or otherwise used any of the conduits within the UVU Conduit System, discovery should be allowed to progress, with leave to renew this motion as to the Taking Cause claims following discovery.

DATED this 23rd day of May 2024.

**FULLER LAW OFFICE, LC**

/s/ Robert J. Fuller
ROBERT J. FULLER
*Attorney for Upper Valley Utilities, LLC*

(EXHIBITS 1-5: SEE APPENDIX OF EVIDENCE IN OPENING BRIEF)

I, /s/ Robert J. Fuller, certify that this motion contains the following total word auto count based on Word software: 6,180 (including the signature and certificate of service) complying with DUCivR 7-1(a)(4).

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing REPLY IN

SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT ON THE ISSUE OF

LIABILITY FOR BREACH OF CONTRACT and TAKING UNDER 42 U.S.C. §1983

was served via e-filing on this 23rd day of May, 2024, to the following:

MATTHEW D. CHURCH
TAYLOR P. KORDSIEMON
MANNING CURTIS BRADSHAW
& BEDNAR PLLC
mchurch@mc2b.com
tkordsiemon@mc2b.com
*Attorneys for Orem City*

By: */s/ Robert J. Fuller*

2024-05-23. 5804 .240523.f Reply UVU MSJ Liability